**VICTOR PIPPINS**
California Bar No. 251953
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
Victor_Pippins@fd.org

Attorneys for Mr. Javier Moreno-Mendoza

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JOHN A. HOUSTON)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO.: 08cr0625-JAH |
| Plaintiff, ) | DATE: APRIL 14, 2008 |
| ) | TIME: 8:30 a.m. |
| v. ) | |
| JAVIER MORENO-MENDOZA, ) | STATEMENT OF FACTS AND |
| ) | MEMORANDUM OF POINTS AND |
| Defendant. ) | AUTHORITIES IN SUPPORT OF MOTION |

**I.**

**STATEMENT OF FACTS**

According to information provided by the government, which Mr. Moreno-Mendoza does not adopt or accept, Mr. Moreno-Mendoza made application for entry into the United States from Mexico through the pedestrian entrance at the San Ysidro, California Port of Entry at approximately 8:00 p.m. on February 11, 2008. Customs and Border Protection Agent Armando Rodriguez claims to have run a query on Mr. Moreno-Mendoza, and as a result of this query sent Mr. Moreno-Mendoza to secondary inspection with Agent Roberto Manuel. The results of further investigation led to Mr. Moreno-Mendoza being arrested for violation of Title 8, United States Code section 1326, Attempted Entry After Deportation. While it is clear that Mr. Moreno-Mendoza exercised his right to remain silent after being advised of his rights under Miranda, it is alleged that he made inculpatory statements while in custody but previous to being advised of his rights.

1   On March 5, 2008 and indictment was handed down by the Grand Jury of the Southern District
2 of California, charging Mr. Moreno-Mendoza with a violation of Title 8, United States Code section 1326
3 (a) and (b). A not guilty plea was entered on Mr. Moreno-Mendoza's behalf.

## II.

## MOTION TO COMPEL DISCOVERY

Mr. Moreno-Mendoza moves for the production of the following discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

To date, *defense counsel has received 74 pages of discovery*. Mr. Moreno-Mendoza respectfully requests that the Government be ordered to produce discovery because Mr. Moreno-Mendoza has reason to believe that he has not received all the discoverable material in his case. Ms. Moreno-Mendoza **specifically requests production of a copy of the taped proceedings and any and all documents memorializing the deportation proceeding allegedly held and any other proceedings that the Government intends to rely upon at trial**. This request includes discovery of materials known to the Government attorney, as well as discovery of materials which the Government attorney may become aware of through the exercise of due diligence. See FED. R. CRIM. P. 16.

Mr. Moreno-Mendoza has also not received a full copy of his A-file. Mr. Moreno-Mendoza specifically requests the documents memorializing the alleged deportation proceedings and any other proceedings that the Government intends to rely upon at trial.

Mr. Moreno-Mendoza additionally requests that the Court order the Government to allow him the opportunity to review his A-file in its entirety. First, the A-file contains documentation concerning his alleged deportation. Part of Mr. Moreno-Mendoza defense may be that his underlying deportation was invalid. The documents in the A-file would help illuminate the validity or futility of such a defense. For example, A-file documents typically contain biographical information. Such information is essential to determining whether Mr. Moreno-Mendoza deportation was invalid.

Second, the Government will likely try to show at trial that a Government officer searched the A-file and did not find an application by Mr. Moreno-Mendoza for permission to enter the United States.

1  Mr. Moreno-Mendoza anticipates that the Government will attempt to admit a "Certificate of Non-Existence
2  of Record" against him, arguing that if Mr. Moreno-Mendoza had ever applied for permission to enter the
3  United States, such an application would be found in the A-file and because such an application is not in the
4  A-file, Mr. Moreno-Mendoza must not have applied for permission to enter the United States.

Although the certificate might be admissible, the question of the thoroughness of the search conducted by the Government of the A-file is, and should be, open to cross-examination. United States v. Sager, 227 F.3d 1138, 1145 (2000) (error not to allow jury to "grade the investigation."). Mr. Moreno-Mendoza should be able to review his A-file in order to see whether any application for lawful admission exists. Moreover, Mr. Moreno-Mendoza should also be able to verify whether other documents that would ordinarily be in the A-file are "non-existent," or otherwise missing from her A-file. Mr. Moreno-Mendoza may assert a defense that his application for lawful entry was lost or otherwise misplaced by the Government. He must be allowed the opportunity to review his A-file and the manner in which it is being maintained by the Government in order to present this defense.

**III.**

**THE INDICTMENT MUST BE DISMISSED DUE TO ITS FAILURE TO ALLEGE AN OVERT ACT COMMITTED BY MR. MORENO-MENDOZA**

Mr. Moreno-Mendoza has been charged with attempted entry, a violation of Title 8 U.S.C. § 1326. The indictment fails to state an offense, since it does not allege that Mr. Moreno-Mendoza committed an overt act -- a required element in "attempt" cases. See United States v. Gracidas-Ulibarry, 231 F.3d 1188, 1196 (9th Cir. 2000) (en banc). The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V. An indictment's failure to "recite an essential element of the charged offense is not a minor or technical flaw . . . but a fatal flaw requiring dismissal of the indictment." United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999); see also, United States v. Pernillo-Fuentes, 252 F.3d 1030 (9th Cir. 2001).

The Ninth Circuit has recently held that "failure to allege any specific overt act that is a substantial step toward entry is a fatal defect in an indictment for attempted entry following deportation under 8 U.S.C. §1326." United States v. Resendiz-Ponce, 425 F.3d 729 (9th Cir. 2005).

//

**A.    The Commission of an Overt Act Is a Required Element in "Attempt Crimes"**

An overt act is required to protect the innocent from conviction for merely thinking about committing a crime. "The common law meaning of 'attempt' is the specific intent to 'engage in criminal conduct and ... an overt act which is a substantial step towards committing the crime.'" Gracidas-Ulibarry, 231 F.3d at 1192, citing United States v. Arbelaez, 812 F.2d 530, 534 (9th Cir.1987); accord United States v. Bailey, 444 U.S. 394, 405 (1980); Wooldridge v. United States, 237 F. 775, 778-79 (9th Cir.1916) (collecting common law sources "holding that, to constitute an attempt, there must be the intent to commit a crime and some act done toward its consummation, and that the term 'attempt' signifies both an act and the intent with which it is done"); 2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 6.2, at 18 (1986) ("The crime of attempt . . . [at] common law . . . consists of: (1) an intent to do an act or to bring about certain consequences which would in law amount to a crime; and (2) an act in furtherance of that intent which . . . goes beyond mere preparation.").

The Ninth Circuit en banc has adopted the common-law definition of attempt and has held that "the elements of the crime of attempted illegal reentry into the United States under 8 U.S.C. § 1326 are: (1) the defendant had the purpose, i.e., conscious desire, to reenter the United States without the express consent of the Attorney General; (2) *the defendant committed an overt act that was a substantial step towards reentering without that consent*; (3) the defendant was not a citizen of the United States; (4) the defendant had previously been lawfully denied admission, excluded, deported or removed from the United States; and (5) the Attorney General had not consented to the defendant's attempted reentry." Gracidas-Ulibarry, 231 F.3d at 1196 (emphasis added).

**B.    The Indictment Must Be Dismissed Because It Does Not Allege an Overt Act That Was a Substantial Step Which Corroborates the *Mens Rea* of the Charged Offense.**

In an attempt to comply with Resendiz-Ponce, the indictment alleges that Mr. Moreno-Mendoza "committed an overt act, to wit, crossing the border from Mexico into the United States, that was a substantial step towards committing the offense."

However, merely stating that a particular act is a substantial step, however, does not satisfy the Ninth Circuit's description of that element. The "purpose of [the] substantial step requirement in attempt crimes is to corroborate the actor's specific intent to commit the crime." Walters v. Maass, 45 F.3d 1355, 1349 (9th

1 Cir. 1995) (citing United States v. Plenty Arrows, 946 F.2d 62, 66 (8th Cir. 1991)).  Thus, the government must allege and prove "culpable intent and conduct constituting a substantial step toward commission of the crime that strongly corroborates that intent." United States v. DeRosa, 670 F.2d 889, 894 (9th Cir. 1982) (citing United States v. Snell, 627 F.2d 186, 187 (9th Cir. 1980)).  The language employed in the indictment's substantial step allegation makes no reference to *mens rea* at all.  Instead, it simply charges that Mr. Moreno-Mendoza "committed an overt act, to wit, crossing the border from Mexico into the United States, that was a substantial step towards committing the offense."  The grand jury thus did not find, nor was it asked to find, "a substantial step toward commission of the crime *that strongly corroborates [the requisite] intent*." See DeRosa, 670 F.2d at 894.  The indictment therefore fails to state an offense against the United States.

Because "[f]ailure to allege an essential element of the offense is a fatal flaw not subject to mere harmless error analysis[,]" the Ninth Circuit "reverse[d] the judgment against Resendiz and direct[ed] the district court to dismiss the indictment without prejudice to reindict[]." Resendiz-Ponce, 425 F.3d at 732-33 (citing United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999)). Accord United States v. Pernillo-Fuentes, 252 F.3d 1030, 1032 (9th Cir. 2001) (the remedy for the failure to allege an element of a section 1326 offense is dismissal).  Accordingly, the instant indictment must likewise be dismissed because it fails to allege all essential elements of the offense of an attempted entry, in violation of 8 U.S.C. § 1326.

The purpose of an overt act element, in an attempt indictment, is to protect the innocent, by showing that the prohibited actions must be more than just thought or "mere preparation." See Rollin M. Perkins & Ronald N. Boyce, Criminal Law § 3.A.7, at 637 (3d ed. 1982).  Without alleging an overt act the indictment fails to allege an essential element, and in doing so it fails to state an offense.  This is a fatal flaw, and dismissal of the indictment is required. Du Bo, 186 F.3d at 1179.

**III.**

**THE STATEMENTS MUST BE SUPPRESSED UNDER MIRANDA AND A HEARING HELD AS TO THE ADMISSIBILITY OF THE PRE-MIRANDA STATEMENTS MADE WHILE MR. MORENO-MENDOZA WAS IN CUSTODY**

**A.     Miranda Warnings Must Precede Custodial Interrogation.**

It is well known that before a defendant in custody can be questioned about alleged criminal activity, he must be given warnings under Miranda v. Arizona, 384 U.S. 436 (1966). Miranda explained that "when the person being interrogated is 'in custody at the station or otherwise deprived of his freedom of action in

1 any significant way,'" warnings are required. <u>Orozco v. Texas</u>, 394 U.S. 324, 327(1969) (quoting <u>Miranda</u>, 384 U.S. at 477).  A suspect is in custody if the actions of the interrogating officers and the surrounding circumstances, fairly construed, would reasonably have led him to believe that he could not freely leave.  <u>See</u> <u>United States v. Lee</u>, 699 F.2d 466, 468 (9th Cir. 1982); <u>United States v. Bekowies</u>, 432 F.2d 8, 12 (9th Cir. 1970). Although questions regarding routine biographical information usually do not trigger the safeguard of <u>Miranda</u>, the exception does not apply "where the elicitation of information regarding immigration status is reasonably likely to inculpate the [suspect]." <u>United States v. Gonzalez-Sandoval</u>, 894 F.2d 1043, 1046 (9th Cir. 1990). In fact, because of the close relationship between civil and criminal immigration investigations, "[c]ivil as well as criminal interrogation of in-custody defendants by INS investigators should generally be accompanied by the <u>Miranda</u> warnings." <u>United States v. Mata-Abunditz</u>, 717 F.2d 1277, 1279 (9th Cir. 1983).

**B.      <u>Mr. Moreno-Mendoza Was in Custody When the Alleged Statements Were Made.</u>**

In determining whether an individual is in custody for purposes of <u>Miranda</u>, the 9th Circuit has instructed courts to consider "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention;  and (5) the degree of pressure applied to detain the individual." <u>United States v. Kim</u>, 292 F.3d 971, 973 (9th Cir. 2002) (citations omitted). The same considerations apply in the context of custody at the border. <u>See</u> <u>United States v. Estrada-Lucas</u>, 651 F.2d 1261, 1265 (9th Cir. 1980). Furthermore, questions by agents implying a person is suspected of criminal activity can give rise to a reasonable belief that one is not free to leave and thus turn an encounter with law enforcement into custody for purposes of <u>Miranda</u>. <u>United States v. Chavez-Valenzuela</u>, 268 F.3d 719, 725 (9th Cir. 2001).  A person does not need to be physically restrained to be in "custody." The 9th Circuit has found that an individual questioned out in an open field, neither handcuffed or told he was under arrest, to be in custody for purposes of <u>Miranda</u>. <u>United States v. Beraun-Panez</u>, 812 F.2d 578, 579 (1987). In that case, the court held that "[a]lthough not physically bound, Beraun-Panez was subjected to psychological restraints just as binding."  <u>Id.</u> at 580.

Case Agent Elizabeth Rangel-Machuca wrote in her report that prior to receiving a <u>Miranda</u> advisement, Mr. Moreno-Mendoza divulged details of his criminal history and that he deliberately told the primary inspection officer that he was a US citizen in order to gain admission into the United States.  Mr.

1  Moreno-Mendoza was clearly in custody at this point but had not received an advisement of his rights.
2  Mr. Moreno-Mendoza had been taken to secondary inspection for processing and the agents were already
3  aware that he had previously been convicted of Title 8, United States Code section 1326.  It was clear to
4  Mr. Moreno-Mendoza that he was not free to leave, yet the agents continued to speak with him without
5  advising him of his Miranda rights.  Mr. Moreno-Mendoza was not advised of his Miranda rights until nearly
6  1:00 a.m. on February 12, over 5 hours from the time that he allegedly made application for admission into
7  the United States.  Further, Mr. Moreno-Mendoza was confronted with evidence of his guilt immediately as
8  Agent Rodriguez began questioning him about his citizenship and nationality, the precise elements of the
9  crime he was suspected of committing, attempted illegal reentry in violation of 8 U.S.C. § 1326.  Because Mr.
10 Moreno-Mendoza was in custody when he was questioned, any questioning must have been preceded by
11 Miranda warnings.  Upon being advised of his Miranda rights, Mr. Moreno-Mendoza invoked.

12 **C.    This Court Must Hold A Hearing Under 18 U.S.C. § 3501 To Determine Whether Mr. Moreno-Mendoza's Alleged  Pre-Miranda Statements Were Made Voluntarily.**
13

14         Under 18, U.S.C. § 3501(a), "[b]efore [a] confession is received in evidence, the trial judge shall,
15 out of the presence of the jury, determine any issue as to voluntariness." This Court is thus required to
16 determine whether any statements made by Mr. Moreno-Mendoza were voluntary. Additionally, 18 U.S.C.
17 § 3501(b) requires this Court to consider numerous enumerated factors in determining whether Mr. Moreno-
18 Mendoza voluntarily made a statement. These factors include whether he understood the nature of the charges
19 against him and whether he understood his constitutional rights.

20         Section 3501(a) clearly requires this Court to make a factual determination. When a factual
21 determination is required, Federal Rule of Criminal Procedure 12 requires the court to make factual findings.
22 See United States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990). Since "'suppression hearings are often
23 as important as the trial itself,'" these findings should be supported by evidence, not merely an unsubstantiated
24 recitation of purported evidence in a prosecutor's responsive pleadings. Id. at 610 (quoting Waller v. Georgia,
25 467 U.S. 39, 46 (1984)). Without the presentation of evidence, this Court cannot adequately consider the 18
26 U.S.C. § 3501(b) factors. Therefore, Mr. Moreno-Mendoza requests this Court conduct an evidentiary hearing
27 pursuant to 18 U.S.C. § 3501(a) to determine, outside the presence of the jury, whether the statements he made
28 were voluntary.

## IV.

## MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

*Mr. Moreno-Mendoza has received 74 pages of discovery.* He has not however received any audiotapes of his deportation proceeding as well as a photocopy of the A-file. As information comes to light, due to the government providing additional discovery in response to these motions or an order of this Court, Mr. Moreno-Mendoza may find it necessary to file further motions. It is, therefore, requested that Mr. Moreno-Mendoza be allowed the opportunity to file further motions based upon information gained through the discovery process. Specifically, because Mr. Moreno-Mendoza's collateral attack on the underlying deportations relies on the audiotapes of the deportation proceedings, he requests the opportunity to file further briefing to support his collateral attack once he has been provided an opportunity to listen to the proceedings.

## V.

## CONCLUSION

For the foregoing reasons, Mr. Moreno-Mendoza respectfully requests that the Court grant the above motions.

Respectfully submitted,

Dated: April 1, 2008

/s/ Victor Pippins
**VICTOR PIPPINS**
Federal Defenders of San Diego, Inc.
Attorneys for Javier Moreno-Mendoza
Victor_Pippins@fd.org