**VICTOR PIPPINS**
California Bar No. 251953
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
(619) 234-8467 (tel); (619) 687-2666 (fax)
Victor-Pippins@fd.org

Attorneys for Mr. Javier Moreno-Mendoza

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JOHN A. HOUSTON)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 08CR0625-JAH |
| Plaintiff, | ) | |
| v. | ) | STATEMENT OF FACTS AND |
| **Javier Moreno-Mendoza** | ) | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF |
| Defendant. | ) | DEFENDANT'S MOTIONS *IN LIMINE* |
| _____ | ) | |

**I.**

**INTRODUCTION**

Mr. Moreno-Mendoza is charged by indictment with being a deported alien found in the

United States in violation of 8 U.S.C. §1326. This motion incorporates the facts included in the motions

that Mr. Moreno-Mendoza previously filed.

**II.**

**THE COURT SHOULD COMPEL THE GOVERNMENT TO PROVE THE VALIDITY OF THE DEPORTATION TO THE JURY**

The Fifth and Sixth Amendments require that, "all facts necessary to constitute a statutory offense"

must be proven to the jury beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 483-84 (2000);

Id. at 499 (Scalia, J., concurring) (the right to jury trial "means that all the facts which must exist in order to

subject the defendant to a legally prescribed punishment <u>must</u> be found by the jury") (emphasis in original);

1    Id. at 499-500 (Thomas, J., concurring) ("due process requires that the jury find beyond a reasonable doubt

2    every fact necessary to constitute the crime"); In re Winship, 397 U.S. 358, 364 (1970) (same). In 1996,

3    Congress amended § 1326 adding the element of a lawful deportation.  See § 1326(d).  In prior cases

4    analyzing the elements of the offense, the Ninth Circuit had held that the lawfulness of a prior deportation

5    should not be submitted to the petit jury, because it was not an "element of the offense."  See United States

6    v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996) (en banc); see also United States v. Mendoza-Lopez,

7    481 U.S. 828 (1987). The 1996 amendment -- adding the element of a valid deportation -- changed the statute,

8    overruling decisions relying on the fact that the deportation was not an element.  Thus, a lawful deportation

9    is an element of the offense, and, therefore, must be submitted to the petit jury. Apprendi, 530 U.S. at 483-84.

10          Alvarado-Delgado had relied upon the Supreme Court's 1987 decision in United States v. Mendoza-

11   Lopez, 481 U.S. 828 (1987), to hold that the validity of the prior deportation is not an element of the offense

12   to be submitted to the jury. See Alavardo-Delgado, 98 F.3d at 493. In Mendoza-Lopez, the court analyzed the

13   then language of § 1326 which did not allow a collateral attack on the underlying deportation.[1]  However, the

14   statute was changed in 1996 when Congress added § 1326(d), authorizing collateral attacks on the underlying

15   deportation. Thus, a discarded version § 1326 formed the basis for both the Mendoza-Lopez  and Alvarado-

16   Delgado decisions. Due to the change to the statute, specifically adding an element under § 1326(d),

17   Alvarado-Delgado is no longer applicable.

18          Moreover, continuing developments in the Supreme Court's Fifth and Sixth Amendment

19   jurisprudence mandate that the element concerning the validity of the deportation be decided by the petit jury.

20   Under the Fifth and Sixth Amendments, "all facts necessary to constitute a statutory offense" must be proven

21   to the jury beyond a reasonable doubt. Apprendi, 530 U.S. at 483-84; see also Blakely v. Washington, 524

22   U.S. 296 (2004). The validity of the prior deportation is a necessary element of a § 1326 crime.  Thus, under

23   Apprendi and its progeny, a valid deportation must be proved to the jury.

24   / / /

25   / / /

26

27   _____

28          [1] The Supreme Court nevertheless held that a § 1326 defendant could collaterally attack
     the underlying deportation, but that the Due Process Clause, not the statutory language, afforded
     the defendant that right.

1    The amended language in § 1326 coupled with Apprendi, establish that under the doctrine of

2    constitutional doubt, the validity of the deportation must now be proved to the jury. In United States v.

3    Buckland, 289 F.3d 558, 564-67 (9th Cir. 2002) (en banc), the Ninth Circuit, sitting *en banc*, faced a similar

4    question in the context of the federal drug distribution statute. Prior to Apprendi, the Ninth Circuit had held

5    that drug type and quantity under 21 U.S.C. § 841 did not have to be proved to the jury and instead were

6    merely facts to be determined by the judge. In Buckland, however, the Ninth Circuit overruled its prior

7    precedent, finding that the doctrine of constitutional doubt required it to reconsider its statutory construction

8    of § 841 and hold that drug type and quantity were questions for the jury to decide. See Buckland, 289 F.3d

9    at 564. Like § 841, § 1326(d) does not specifically state whether the judge or the jury is to determine whether

10   the prior deportation is lawful. As a result, under the doctrine of constitutional doubt, § 1326(d) should also

11   be construed as requiring a jury determination on this issue. Thus, due to the amendment to the statute, and

12   consistent with the Supreme Court's jurisprudence in Apprendi, a valid deportation is an element of the

13   offense that must be proved to the jury.

14                                          **III.**

15   **THE COURT SHOULD EXCLUDE ADMISSION OF DOCUMENTS NOT YET PRODUCED IN
     DISCOVERY, AND SHOULD REQUIRE THE GOVERNMENT TO COMPLY WITH THE**
16   **NOTICE REQUIREMENTS OF RULE 16 (d)(2)**

17          Pursuant to Rule 16(d)(2), Mr. Moreno-Mendoza requests that the Court prohibit the introduction

18   of any documents not yet produced in discovery. Additionally, pursuant to Federal Rule of Criminal Procedure

19   16 (d)(2), Mr. Moreno-Mendoza requests that the Court order the Government to provide him with prompt

20   written notice of its intention to use any discoverable evidence in its case-in-chief.

21                                          **IV.**

22        **THE COURT SHOULD EXCLUDE DOCUMENTS ABSENT REDACTION**

23          The Government has yet to comply with FED. R. CRIM. P. 12(b)(4)'s notice requirement.

24   Mr. Moreno-Mendoza anticipates that the Government will nonetheless attempt to introduce several

25   documents from an A-file maintained by the Department of Homeland Security. If the Court is inclined to

26   admit such documents, Mr. Moreno-Mendoza requests that the Court order the Government to redact certain

27   portions of the documents such as: (1) any mention that Mr. Moreno-Mendoza was previously convicted of

28   any crime, including the listing of his address as any penal institution.  See FED. R. EVID. 403 and 404(b);

(2) any reference to Mr. Moreno-Mendoza using an alias, or any mention that Mr. Moreno-Mendoza has used an alias. See FED. R. EVID. 403; and (3) any reference to Mr. Moreno-Mendoza as an "alien," because that is an issue for the jury to decide.

**V**.

**THIS COURT SHOULD PRECLUDE TESTIMONY FROM GOVERNMENT WITNESSES REFERRING TO MR. MORENO-MENDOZA AS THE "ALIEN;**

To convict Mr. Moreno-Mendoza, the Government must prove that he is an "alien." See 8 U.S.C. § 1326. "Alien" is a legal term that will be defined by this Court. See Berry v. City of Detroit, 25 F.3d 1342 (6th Cir. 1994) (responsibility of court, not testifying witnesses, to define legal terms); FED. R. EVID. 704(a). It is also a finding that the jury must make, and thus, no witness is permitted to opine that this element has been proved. See United States v. Espino, 32 F.3d 253, 257 (7th Cir. 1994) (question whether the defendant was "admitting the conspiracy" was improper because it required a legal conclusion).

The Government will call several witnesses from the Immigration and Naturalization Service (INS), particularly the Government will call the A-file custodian, border patrol agents, and detention enforcement officers. Because the INS has accused Mr. Moreno-Mendoza of being an alien, it is anticipated that these witnesses will refer to Mr. Moreno-Mendoza as "the alien." If these witnesses testify that Mr. Moreno-Mendoza is an alien, it will create confusion among the jurors regarding This Court's instructions on the law and what the Government has (or has not) proved, in violation of FED. R. EVID. 403. It will also subvert Mr. Moreno-Mendoza right to a jury finding of every essential element guaranteed by the Fifth and Sixth Amendments. Thus, this Court should preclude the witnesses from referring to Mr. Moreno-Mendoza as "the alien."

**VI.**

**THIS COURT SHOULD REQUIRE THE GOVERNMENT TO PROVIDE INSPECTION OR PRODUCTION OF CERTIFIED DOCUMENTS**

While Mr. Moreno-Mendoza objects to the introduction of any A-File documents, it is clear that no public record can be introduced unless certified. The defense has yet to receive copies of any alleged certifications. Typically these simply appear in the middle of trial. Defense counsel requests an opportunity

1  to inspect any alleged certifications pre-trial so that any issues can be dealt with accordingly. The defense is
2  happy to permit Government inspection of its certified documents pre-trial.

3  **VII.**

4  **THIS COURT SHOULD PRECLUDE THE INTRODUCTION OF "MUG SHOTS" OF
5  MR. MORENO-MENDOZA**

6      Discovery documents provided in this case include some "mug shot"-style pictures of Mr. Moreno-
7  Mendoza taken while he was in custody. Because this is not an identity case, these pictures have no place at
8  this trial. Mr. Moreno-Mendoza does not dispute that he is the individual arrested in the instant case.
9  Accordingly, these pictures have no probative value. In contrast, however, their appearance automatically
10 places Mr. Moreno-Mendoza as a criminal in mind of the jury, and is not unlike forcing a defendant to wear
11 jail-issued clothing while in trial. Under FED. R. EVID. 403, these pictures are highly prejudicial and devoid
12 of probative value. They should be excluded from trial as a result.

13 **VIII.**

14 **THIS COURT SHOULD PROHIBIT THE CERTIFICATE OF NONEXISTENCE OF RECORD
   AS INADMISSIBLE BECAUSE IT VIOLATES THE CONFRONTATION CLAUSE OF THE
15 UNITED STATES' CONSTITUTION AND ALLOWS THE GOVERNMENT TO CIRCUMVENT
   ITS DISCOVERY OBLIGATIONS**
16

17     The government may seek to produce and introduce a Certificate of Nonexistence of Record
18 (hereinafter "CNER") when it is received.  Mr. Moreno-Mendoza is expecting the government will try and
19 introduce this record.  The Government may attempt to establish that Mr. Moreno-Mendoza did not obtain
20 permission for admission into the United States by offering the CNER.  This document is inadmissible
21 because it violates the Confrontation Clause and because it is an attempt to circumvent the  government's
22 discovery obligations.

23      The use of a CNER violates Mr. Moreno-Mendoza's Sixth Amendment Confrontation Clause right,
24 which "guarantees an opportunity for effective cross-examination . . . ."  United States v. Lo, 231 F.3d 471
25 (9th Cir. 2000) (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985)).  "Evidence may be admissible under
26 an exception to the hearsay rule and still violate the Confrontation Clause."  United States v. Neff, 615 F.2d
27 1235, 1241 (9th Cir. 1980).  The admission of a CNR deprives Mr. Moreno-Mendoza of the opportunity to
28

cross-examine the declarant on the competency of his or her investigation. This cross-examination is crucial, as the Government will likely rely entirely on this document to establish that particular element of the offense.

Again, the Supreme Court's decision in Crawford v. Washington, squarely held, pursuant to the Sixth Amendment, that pre-trial, testimonial statements may not be admitted against a defendant at trial where the defendant has not had a chance to cross examine the declarant. Crawford, 124 S. Ct. at 1374. The reasoning outlined in Section II, C above pertains to the CNER as well.

The government may attempt to rely on United States v. Mateo-Mendez, 215 F.3d 1039 (9th Cir. 2000), which affirmed district court's admission of a CNER, addressing hearsay and authentication issues but not Confrontation Clause violation. But the Ninth Circuit specifically did not reach the Confrontation Clause issue in Mateo-Mendez as it had not been briefed or argued. Mateo-Mendez, 215 F.3d at 1043. The government may also attempt to rely on United States v. Loyola-Dominguez, in arguing for the admission of the CNER. 125 F.3d 1315, 1317 (9th Cir. 1997). The validity of this pre-Crawford Ninth Circuit precedent regarding CNERs is clearly in question.

Finally, the failure to have this witness testify at trial and allow the admission of the CNER is an attempt by the Government to circumvent its discovery obligations under Brady, Giglio and the Jenks Act. See Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. U.S., 405 U.S. 150 (1972), 18 U.S.C. § 3500 *et seq*. If the declarant were to appear at trial to testify, Mr. Moreno-Mendoza would undoubtedly be entitled to discovery material, including impeachment evidence against that declarant and her own prior statements and certain other documents (in addition to being entitled to exercise the right of cross-examination).[2] If the Court does allow the admission of the CNER, Mr. Moreno-Mendoza requests production of any and all discoverable material to which he would be entitled were this witness to testify at trial.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[2]Additionally, it is unknown if the witness conducted the search of the records herself or delegated that job to the individual who actually signed the document.

## IX.

### THIS COURT SHOULD PRECLUDE ANY EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 404(B) AND 609.

**A.**     **Exclusion of Other Acts Evidence Under Rules 404(b)and 403.**

The government carries the burden of showing how any other acts evidence is relevant to one or more issues in the case; therefore, "it must articulate precisely *the evidential hypothesis* by which a fact of consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (citing United States v. Hernandez-Miranda, 601 F.2d 1104, 1108 (9th Cir. 1979)) (emphasis added); accord United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993).  Because the government evidential hypothesis is insufficient, this evidence must be excluded under Federal Rules of Evidence 401, 404(b) and 403.

**B.**     **Exclusion of Prior Convictions to Impeach Witness Under Rule 609.**

Federal Rule of Evidence 609(a)(1) restricts impeachment of the accused by evidence of a prior conviction to only those offenses for which the court determines that the probative value outweighs its prejudicial effect to the accused.  The government should be precluded from introducing any evidence of the prior conviction because it is irrelevant under Federal Rule of Evidence 401, and prejudicial under Federal Rule of Evidence 403.  Any prior offense does not make the existence of any fact that is of consequence more or less probable, nor has any relevance to any element of the present charge against Mr. Moreno-Mendoza. Even if Mr. Moreno-Mendoza were to testify at trial, the danger of unfair prejudice would substantially outweigh any possible relevance of his prior offense.  Fed. R. Ev. 401, 403, 609.

To the extent that this Court rules that Mr. Moreno-Mendoza's alleged prior conviction is admissible under Federal Rule of Evidence 609, this Court should redact any documents referencing, and preclude the prosecutor from referring to, the offense and specific facts of any crime for which Mr. Moreno-Mendoza was convicted.  Such information would be more prejudicial than probative of Mr. Moreno-Mendoza's  guilt of the charged offense.

/ / /

/ / /

/ / /

## X.

## THIS COURT SHOULD ALLOW ATTORNEY-CONDUCTED VOIR-DIRE

Pursuant to Rule 24(a), Federal Rules of Criminal Procedure, to provide effective assistance of counsel and to exercise Mr. Moreno-Mendoza right to trial by an impartial jury, defense counsel requests the opportunity to personally voir dire the prospective members of the jury.

## XI.

## THIS COURT SHOULD ORDER PRODUCTION OF GRAND JURY TRANSCRIPTS

The Court should order production of grand jury transcripts if a witness who likely will testify at the trial of Mr. Moreno-Mendoza also is likely to have testified before the grand jury. Dennis v. United States, 384 U.S. 855 (1966); Fed. R. Crim. R. 26.2(f)(3). The defense requests that the government make such transcripts available in advance of trial to facilitate the orderly presentation of evidence and to remove any need for recess in the proceedings for defense counsel to examine the statements pursuant to Federal Rule of Criminal Procedure 26.2(d).

## XII.

## THIS COURT SHOULD PRECLUDE THE GOVERNMENT FROM USING DOCUMENTS OF DEPORTATION AS EVIDENCE OF ALIENAGE

**A.    The Warrant of Deportation and the Order of Deportation Are Only Admissible to Establish the Fact of the Deportation, *Not* Alienage**

Mr. Moreno-Mendoza expects that the government will seek to introduce a warrant of deportation and an order of deportation to establish the fact of his alleged deportation. These two documents are admissible *only* to establish the fact of the deportation. See, e.g., United States v. Contreras, 63 F.3d 852, 857 (9th Cir. 1995); United States v. Hernandez-Rojas, 617 F.2d 533, 535-36 (9th Cir. 1980). Neither the warrant of deportation nor the order of deportation reflect the "objective, ministerial fact" of alienage; accordingly, neither are admissible under Federal Rule of Evidence 803(8)(B) to establish the fact of alienage.

Both the warrant of deportation and the order of deportation reflect the ministerial fact of the *deportation*, not Mr. Moreno-Mendoza's alleged alienage. As the Ninth Circuit has explained:

> **Clearly it would be improper for the government to rely on factual findings from a deportation hearing to prove an element of the crime of illegal reentry, as the burden of proof in a criminal proceeding requires a greater showing by the government than in an administrative hearing.** The use of a deportation order to prove the element of alienage would allow the government to skirt around the more stringent requirements of a

criminal proceeding by relying on that factual finding from the INS proceeding. To put it more simply, the government would demonstrate that Medina is an alien by showing that the INS found that he was an alien.

United States v. Medina, 236 F.3d 1028, 1030, 1031 (9th Cir. 2001) (emphasis added). Simply put, alienage is not a fact that is observed; it is a fact that is "found" by an INS official after an administrative hearing, and the order of deportation reflects the quintessential "factual finding" rendered after an administrative hearing. Likewise, the warrant of deportation reflects only that an immigration judge found Mr. Moreno-Mendoza to be an alien after an administrative hearing, and that Mr. Moreno-Mendoza may have been removed from the United States after that deportation—it has no bearing whatsoever on the fact of alienage. Accordingly, the warrant of deportation and order of deportation are not admissible under Federal Rule of Evidence 803(8) or Federal Rule of Evidence 401 to establish the fact of alienage.[3]

Finally, to the extent that this Court finds that these documents are relevant under Federal Rule of Evidence 401, these documents should still be excluded pursuant to Federal Rule of Evidence 403, because their probative value is substantially outweighed by their prejudicial effect. Both the order of deportation and warrant of deportation make reference to an "alien;" even more troubling, in the context of these documents, the term "alien" is associated *with* Mr. Moreno-Mendoza, who presumably is the "alien" to which the documents refer. In the face of these quasi-official government documents proclaiming Mr. Moreno-Mendoza to be an "alien," there is a real danger that jurors will no longer see the alienage element of 8 U.S.C. § 1326 as an open question that the government must prove beyond a reasonable doubt.

---

[3]     In United States v. Hernandez-Herrera, 273 F.3d 1213, 1217-1218 (9th Cir. 2001), the Ninth Circuit stated summarily that A-file documents are admissible under Federal Rule of Evidence 803(8)(B) to establish the fact of alienage. Because the court failed to set forth any reasoned discussion, failed to discuss the decision in Medina, and did not specify which documents from the A-file were admitted in Mr. Hernandez-Herrera's case, see id., this case is not binding authority, and this Court must still address this issue. See, e.g., Miranda B. v. Kitzhaber, 328 F.3d 1181, 1186 (9th Cir. 2003) (per curiam) (requiring "reasoned consideration in a published opinion" for a "ruling [to] becom[e] the law of the circuit"); United States v. Collicott, 92 F.2d 973, 980 n.4 (9th Cir. 1996) (holding that prior Ninth Circuit case is not binding "in the absence of reasoned analysis and analogous facts"). In any event, Hernandez-Herrera never held that these documents were admissible under Federal Rules of Evidence 401 or 403 or the Fifth and Sixth Amendments. See Webster v. Fall, 266 U.S. 507, 512 (1925) (stating that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon are not to be considered as having been so decided as to constitute precedent").

Should the Court nonetheless admit these documents, Mr. Moreno-Mendoza requests that this Court instruct the jury, pursuant to Federal Rule of Evidence 105, that it may only consider the warrant of deportation and the order of deportation to establish the fact of the deportation and for no other purpose, and that these documents do not, in and of themselves, establish the fact of alienage. Mr. Moreno-Mendoza further requests that this Court redact these documents to exclude any reference to his alleged alienage.

**B.      None of the Other A-File Documents Are Admissible By the Government Under Any Rule of Evidence.**

Mr. Moreno-Mendoza anticipates that the government may seek to admit other documents from the A-file, including the notice to appear/order to show cause why a person should not be deported and warnings regarding the possible penalties for reentry. None of these documents from the A-file are admissible by the government to establish any matter at issue in this trial. All documents from the A-file—except the warrant of deportation and the order of deportation discussed previously—are irrelevant under Federal Rule of Evidence 401; more prejudicial than probative, cumulative, and a waste of time under Federal Rule of Evidence 403; and inadmissible hearsay under Federal Rule of Evidence 803(8).

**1.      The Notice to Appear Is Inadmissible.**

The Notice to Appear is inadmissible under Federal Rules of Evidence 401, 403, and 803(8). The Notice to Appear is a document that provides an alien with *notice* of the grounds for removal. It does not record the "objective, ministerial fact" of alienage or of a deportation any more than an indictment provides an objective observation that a person committed a crime. This document is nothing more than an *accusation* that the government must prove in an immigration proceeding.

**2.      The Warnings of Possible Penalties Is Inadmissible.**

Likewise, the warning of possible penalties is inadmissible under Federal Rules of Evidence 401, 403, and 803(8). The warning of possible penalties contains boilerplate statements (drafted by the former INS) regarding the penal consequences to an alien who illegally reenters the country. It has no bearing on whether a defendant is in fact an alien, and it makes no fact at issue in this case more or less probable. This document contains inadmissible hearsay, and is completely irrelevant. It is also more prejudicial than probative. Among other things, given the serious consequences listed on the warning of possible penalties, jurors may be led to speculate what this defendant did to be subject to such harsh penalties upon reentry;

1  needless to say, such speculation is completely irrelevant to the charge at hand and could be severely

2  prejudicial.  Accordingly, the warnings of possible penalties also must be excluded at trial.

3        **3.      If this Court Finds That These Documents Are Somehow Relevant,  They Are Not
             Admissible to Establish Alienage; Thus, This Court Should Provide the Jury With a
4            Limiting Instruction.**

5        To the extent that this Court finds any A-file document relevant to some point, the document is not

6  admissible to establish Mr. Moreno-Mendoza's  alienage.  Accordingly, this Court should redact these

7  documents to exclude all references to alienage.  Additionally, the Court should instruct the jury as to the

8  limited value of such documents pursuant to Federal Rule of Evidence 105.

9  **C.      This Court Must Preclude the Admission of the A-file Documents to Establish Alienage to
         Protect Mr. Moreno-Mendoza's Constitutional Rights.**
10

11        Finally, this Court must preclude the admission of A-file documents to establish the fact of alienage

12  to protect Mr. Moreno-Mendoza's  rights to confrontation of witnesses and to a jury trial based upon proof

13  beyond a reasonable doubt—rights guaranteed by the Fifth and Sixth Amendments.  Because the right to

14  confrontation is not applicable in immigration proceedings, the government may have met its burden of

15  proving alienage in such a proceeding based upon otherwise inadmissible hearsay.  Cunanan v. INS, 856 F.2d

16  1373, 1374 (9th Cir. 1988).  Similarly, because a criminal defendant such as Mr. Moreno-Mendoza never has

17  the opportunity to confront those witnesses upon whose hearsay statements the immigration judge may have

18  relied, the admission of the (former) INS' evaluation of alienage deprives a defendant of his right to confront

19  the witnesses against him.

20        Additionally, in immigration proceedings, the government need only establish alienage by clear and

21  convincing evidence.  Murphy v. INS, 54 F.3d 605, 608-610 (9th Cir. 1995).  Once the government has

22  established a person's foreign birth, the burden shifts to the purported alien to establish, by a preponderance

23  of the evidence, that he falls within one of the statutory provisions for derivative citizenship.  Id.  Given the

24  lower burden of proof and the shifting presumption, the admission of A-file documents against a criminal

25  defendant to establish the fact of alienage has the effect of lowering the government's burden of proving

26  alienage in the criminal trial.

27        Finally, a determination of alienage by a quasi-judicial decision-maker represents powerful evidence

28  of an element of the offense, and it creates a substantial risk that the jury will give this evidence undue weight

or conclusive effect.  Cf. Nipper v. Snipes, 7 F.3d 415, 418 (4th Cir. 1993) (internal quotations omitted) (stating "judicial findings of fact 'present a rare case where, by virtue of there having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice'"); Federal Rules of Evidence 803(22), Advisory Committee Note (observing that "it seems safe to assume that the jury will give [evidence of a criminal judgment] substantial effect unless defendant offers a satisfactory explanation").  The government's introduction of a government agency's finding of alienage to establish the fact of alienage carries with it the imprimatur of governmental, if not judicial, approval.  The admission of this factual finding undermines a defendant's constitutional right to a reliable jury finding of an essential element.

In sum, because the A-file documents are generated by the government without the constitutional safeguards surrounding criminal proceedings, it is unconscionable and constitutionally untenable to authorize their admission, as evidence of alienage, in a criminal prosecution.  This Court should exclude these documents in their entirety; or, to the extent the Court finds that these documents are admissible to prove some other fact, it should redact these documents to exclude reference to Mr. Moreno-Mendoza's alienage and instruct the jury as to the documents' limited relevance.

**XII.**

**REQUEST FOR LEAVE TO FILE FURTHER MOTIONS**

As new information surfaces due to the Government providing discovery in response to these motions, those previously filed, or an order of this Court, the defense may need to file further motions.  Therefore, defense counsel requests the opportunity to file further motions.

**XIII.**

**CONCLUSION**

For the foregoing reasons, Mr. Moreno-Mendoza respectfully requests that this Court grant the above requested motions.

Respectfully submitted,

Dated:   May 13, 2008

*s/ Victor Pippins*
**VICTOR PIPPINS**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Moreno-Mendoza
Victor_Pippins@fd.org