```
 1  KAREN P. HEWITT
    United States Attorney
 2  LUELLA M. CALDITO
    Assistant U.S. Attorney
 3  California State Bar No. 215953
    Federal Office Building
 4  880 Front Street, Room 6293
    San Diego, California 92101-8893
 5  Telephone: (619) 557-7035; Facsimile: (619) 235-2757
    Luella.Caldito@usdoj.gov
 6
    Attorneys for Plaintiff
 7  United States of America
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 08CR0625-JAH |
| Plaintiff, | DATE: May 27, 2008<br>TIME: 11:00 a.m. |
| v. | Before Honorable John A. Houston |
| JAVIER MORENO-MENDOZA, | GOVERNMENT'S MOTIONS IN LIMINE TO: |
| Defendant. | (1) EXCLUDE ALL WITNESSES EXCEPT CASE AGENT;<br>(2) ADMIT A-FILE DOCUMENTS AND TESTIMONY;<br>(3) ADMIT CERTIFICATE OF NON-EXISTENCE;<br>(4) ADMIT AUDIOTAPE AND TRANSCRIPT OF DEFENDANT'S DEPORTATION HEARING;<br>(5) ADMIT EXPERT TESTIMONY;<br>(6) PROHIBIT REFERENCE TO HEALTH, AGE, FINANCES, EDUCATION, PUNISHMENT;<br>(7) PRECLUDE ARGUMENT REGARDING DURESS AND NECESSITY;<br>(8) PROHIBIT REFERENCE TO DOCUMENT DESTRUCTION;<br>(9) ADMIT RULE 609 EVIDENCE;<br>(10) PROHIBIT COLLATERAL ATTACK OF THE DEPORTATION;<br>(11) PRECLUDE EXPERT TESTIMONY BY DEFENSE;<br>(12) PRECLUDE SELF-SERVING HEARSAY; AND<br>(13) ADMIT RULE 404(b) EVIDENCE<br><br>TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES |

1  COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Luella M. Caldito, Assistant United States Attorney, and hereby files its Motions In Limine in the above-referenced case. Said motions are based upon the files and records of this case together with the attached statement of facts and memorandum of points and authorities.

**I**

**STATEMENT OF THE CASE**

On March 5, 2008, a federal grand jury in the Southern District of California returned an Indictment charging Javier Moreno-Mendoza ("Defendant") with Attempted Entry After Deportation, in violation of Title 8, United States Code, Section 1326. The Indictment further alleged that Defendant had been removed from the United States subsequent to September 23, 2005. Defendant was arraigned on the Indictment on March 11, 2008, and entered a plea of not guilty.

**II**

**STATEMENT OF FACTS**

**A.    THE INSTANT OFFENSE**

On February 11, 2008, at approximately 8:00 p.m., Defendant attempted to enter the United States from Mexico through the pedestrian lanes at the San Ysidro Port of Entry. At primary inspection, Defendant claimed that he did not have any identification documents and stated that he was a United States citizen by birth in San Diego, California. When asked why Defendant did not have any identification documents, Defendant responded that he had been in Mexico for two weeks. The primary officer then asked Defendant to state his name. Defendant paused before responding "Moreno." When asked if that was Defendant's true name, Defendant stated his true name was "Moreno-Mendoza." The primary officer entered Defendant's name into TECS, which resulted in a positive match. Defendant was then referred to secondary inspection for a possible false claim to United States citizenship.

At secondary inspection, Defendant's fingerprints were entered into the Automated Biometric Identification System (IDENT). Defendant's identity was confirmed, along with his criminal and immigration histories. While at secondary inspection, Defendant claimed that he had served 26 months for illegal entry and was recently released a couple of months ago. Defendant further claimed that he

believed he would be admitted into the United States by simply claiming he was a United States citizen.

At approximately 11:40 p.m., Defendant was advised of his Miranda rights and invoked his right to remain silent.

### B.  DEFENDANT'S IMMIGRATION HISTORY

Defendant is a citizen of Mexico who was ordered deported by an Immigration Judge on or about October 21, 2001 and August 11, 1999. Defendant was removed from the United States to Mexico on several occasions, including but not limited to, September 17, 2007, December 17, 2004, September 5, 2002, December 21, 2001, December 3, 2000, December 1, 2000, and August 14, 1999.

## III

## MOTIONS IN LIMINE

### A.  THE COURT SHOULD EXCLUDE WITNESSES DURING TRIAL WITH THE EXCEPTION OF THE GOVERNMENT'S CASE AGENT

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in the present matter has been critical in moving the investigation forward to this point and is considered by the United States to be an integral part of the trial team. The United States requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615.

### B.  THE COURT SHOULD ADMIT A-FILE DOCUMENTS AND TESTIMONY

The Government intends to offer documents from the Alien Registration File, or "A-file," that correspond to Defendant's name and A-number in order to establish Defendant's alienage and prior deportation as well as the lack of documentation showing that when he attempted to reenter the United States, Defendant had not sought or obtained authorization from the Secretary of the Department of Homeland Security.    The Ninth Circuit has addressed the admissibility of A-File documents in United States v. Loyola- Dominguez, 125 F.3d 1315 (9th Cir. 1997). There, Loyola-Dominguez appealed his § 1326 conviction, arguing, among other issues, that the district court erred in admitting at trial certain records from his "A-file." Id. at 1317. The district court had admitted: (1) a warrant of deportation; (2) a prior warrant for the Defendant's arrest; (3) a prior deportation order; and (4) a prior warrant of deportation. The Defendant in Loyola-Dominguez argued that admission of the documents violated the

1 rule against hearsay, and denied him his Sixth Amendment right to confront witnesses. The Ninth
2 Circuit rejected his arguments, holding that the documents were properly admitted as public records.
3 Id. at 1318. The court first noted that documents from a Defendant's immigration file, although "made
4 by law enforcement agents, . . . reflect only 'ministerial, objective observation[s]' and do not implicate
5 the concerns animating the law enforcement exception to the public records exception." Id. (quoting
6 United States v. Hernandez-Rojas, 617 F.2d 533, 534-35 (9th Cir. 1980)). The court also held that such
7 documents are self-authenticating and, therefore, do not require an independent foundation. Id.

8       The Ninth Circuit has consistently held that documents from a defendant's immigration file are
9 relevant in a § 1326 prosecution to establish the defendant's alienage and prior deportation and
10 admissible under the public records exception to the hearsay rule. See United States v. Mateo-Mendez,
11 215 F.3d 1039, 1042-45 (9th Cir. 2000) (district court properly admitted certificate of nonexistence);
12 United States v. Contreras, 63 F.3d 852, 857-58 (9th Cir. 1995) (district court properly admitted warrant
13 of deportation, deportation order and deportation hearing transcript); United States v. Hernandez-Rojas,
14 617 F.2d at 535 (district court properly admitted warrant of deportation as public record); United States
15 v. Hernandez-Herrera, 273 F.3d 1213, 1217-18 (9th Cir. 2001) ("deportation documents are admissible
16 to prove alienage under the public records exception to the hearsay rule"); United States v.
17 Dekermenjian, 508 F.2d 812, 814 n.1 (9th Cir. 1974) (district court properly admitted "certain records
18 and memoranda of the Immigration and Naturalization Service" as business records, noting that records
19 would also be admissible as public records).

20       The public records exception is "a firmly rooted exception to the hearsay rule" and the admission
21 of these records into evidence would not violate the Confrontation Clause. Hernandez-Herrera, 273 F.3d
22 at 1217-18 (citing United States v. Contreras, 63 F.3d 852, 857 (9th Cir. 1995)); see also Crawford v.
23 Washington, 124 S. Ct. 1354, 1367 (2004) (admission of business records would not violate the
24 Confrontation Clause because business records are not "testimonial" in nature). Furthermore, the public
25 records exception is one of the few hearsay exceptions that does not require a foundation. Id.
26 Documents that fall under the public records exception "are presumed trustworthy, placing 'the burden
27 of establishing untrustworthiness on the opponent of the evidence.'" Montiel v. City of Los Angeles,
28 2 F.3d 335, 341 (9th Cir. 1993) (quoting Keith v. Volpe, 858 F.2d 467, 481 (9th Cir. 1988)). These

documents will be certified and self-authenticating under Fed. R. Evid. 902(4).

At trial, a Customs and Border Protection Enforcement Officer will be called to testify regarding the immigration documents contained in Defendant's A-File, record-keeping procedures, and the significance of certain documents in the file and such testimony will be based on her personal, on-the-job experience.  See Fed. R. Evid. 701 (such testimony is "helpful to a clear understanding of the determination of a fact in issue"); Loyola-Dominguez, 125 F.3d at 1317 (agent "served as the conduit through which the government introduced documents" from A-file).

### C. THE COURT SHOULD ADMIT THE CERTIFICATE OF NON-EXISTENCE

The Certificate of Non-Existence ("CNR") does not constitute testimonial hearsay evidence prohibited by Crawford v. Washington, 541 U.S. 36 (2004).  Rather, it is properly admitted as a self-authenticating, non-testimonial public record.  Fed. R. Evid. 803(10), 902(1); United States v. Cervantes-Flores, 421 F.3d 825, 831-34 (9th Cir. 2005) ("the CNR is nontestimonial evidence under Crawford and thus was properly admitted by the district court"); United States v. Rueda-Rivera, 396 F.3d 678, 680 (5th Cir. 2005) (stating that the documents in a defendant's immigration file are analogous to nontestimonial business records and that "the CNR . . ., reflecting the absence of a record . . ., [does] not fall into the specific categories of testimonial statements referred to in Crawford").

The CNR will be produced to defense counsel as soon as it becomes available to Government counsel.

### D. THE COURT SHOULD ADMIT THE AUDIOTAPE AND TRANSCRIPT OF DEFENDANT'S DEPORTATION HEARING BEFORE AN IMMIGRATION JUDGE

Absent a stipulation, the Government seeks to introduce the portion of the audiotape and transcript of Defendant's removal hearing to establish Defendant's alienage.  The audiotape of the removal hearing was certified as genuine and authentic by the United States Immigration Court.  The audiotape of the removal hearing is also part of Defendant's official A-File, and, consequently, it is admissible under the public records exception to the hearsay rule.  See Fed. R. Evid.803(8)(B); Hernandez-Herrera, 273 F.3d at 1217-18.

Transcripts of tape-recorded proceedings may be given to a jury in a criminal trial for the purpose of aiding the jury in following along a tape recording if certain precautions are taken to ensure

1  the accuracy of the transcript. See United States v. Ben-Shimon, 249 F.3d 98, 101 (2d Cir. 2001). Any
2  prejudice arising from the introduction of the transcript can be ameliorated by a limiting instruction
3  emphasizing the jury's role as ultimate fact-finder. See United States v. Chalarca, 95 F.3d 239, 246 (2d
4  Cir. 1996). The parties could stipulate to the portions of the audiotape and prepare a redacted transcript
5  that excludes references to Defendant's prior criminal convictions and any portions that relate to any
6  other aliens at the deportation hearing. Alternatively, to avoid undue delay and the potential for
7  prejudice, the Government proposes that the parties stipulate that Defendant admitted under oath during
8  his removal hearing on December 21, 2001 that 1) he is not a United States citizen or national and 2)
9  he is a citizen and national of Mexico.

### E.   THE COURT SHOULD ADMIT EXPERT TESTIMONY

11  At trial, the Government intends to offer testimony of its fingerprint analyst, David Beers, to
12  identify the Defendant as the person who was previously deported. On May 20, 2008, the Government
13  provided defense counsel, in discovery, with a copy of Mr. Beers' "Statement of Qualifications" and
14  his report related to this case.

15  If specialized knowledge will assist the trier-of-fact in understanding the evidence or
16  determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in
17  question. Fed. R. Evid. 702. Determining whether expert testimony would assist the trier-of-fact in
18  understanding the facts at issue is within the sound discretion of the trial judge. United States v. Alonso,
19  48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994). An
20  expert's opinion may be based on hearsay or facts not in evidence where the facts or data relied upon
21  are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. In addition, an expert
22  may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the
23  trier-of-fact. Fed. R. Evid. 704.

24  The Government's fingerprint expert will testify that based upon fingerprint comparisons,
25  Defendant was the same person deported from the United States and who attempted entry into the
26  United States on February 11, 2008. In addition, the Government's fingerprint expert may testify to
27  establish the foundation for any prior acts or convictions the United States seeks to use at trial. This
28  testimony should be admitted under Rules 702 and 703.

### F. THE COURT SHOULD PROHIBIT REFERENCE TO DEFENDANT'S HEALTH, AGE, FINANCES, EDUCATION AND POTENTIAL PUNISHMENT

Evidence of, and thus argument referring to, Defendant's health, age, finances, education and potential punishment is inadmissible and improper.

Rule of Evidence 402 provides that "[e]vidence which is not relevant is not admissible." Rule 403 provides further that even relevant evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." The Ninth Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." § 3.1 (2000 Edition).[1]

Reference to Defendant's health, age, finances, education and potential punishment may be relevant at sentencing. However, in an illegal re-entry trial, such reference is not only irrelevant and unfairly prejudicial, but a blatant play for sympathy and jury nullification as well.

### G. THE COURT SHOULD PRECLUDE ARGUMENT CONCERNING DURESS AND NECESSITY

Courts have specifically approved the pretrial exclusion of evidence relating to a legally insufficient duress defense on numerous occasions. See United States v. Bailey, 444 U.S. 394 (1980) (addressing duress); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996), cert. denied, 522 U.S. 826 (1997) (addressing duress). Similarly, a district court may preclude a necessity defense where "the evidence, as described in the Defendant's offer of proof, is insufficient as a matter of law to support the proffered defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

In order to rely on a defense of duress, Defendant must establish a prima facie case that:

(1) Defendant committed the crime charged because of an immediate threat of death or serious bodily harm;

(2) Defendant had a well-grounded fear that the threat would be carried out; and

(3) There was no reasonable opportunity to escape the threatened harm.

---

[1] Additionally, it is inappropriate for a jury to be informed of the consequences of their verdict. United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991), cert. denied, 506 U.S. 932 (1992).

1   United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d at 997.  If Defendant fails to
2   make a threshold showing as to each and every element of the defense, defense counsel should not
3   burden the jury with comments relating to such a defense.  See, e.g., Bailey, 444 U.S. at 416.

4        A Defendant must establish the existence of four elements to be entitled to a necessity defense:
5        (1)    that he was faced with a choice of evils and chose the lesser evil;
6        (2)    that he acted to prevent imminent harm;
7        (3)    that he reasonably anticipated a causal relationship between his conduct and the harm
8                 to be avoided; and
9        (4)    that there was no other legal alternative to violating the law.
10  See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985).  A court
11  may preclude invocation of the defense if "proof is deficient with regard to any of the four elements."
12  See Schoon, 971 F.2d at 195.

13       The United States hereby moves for an evidentiary ruling precluding defense counsel from
14  making any comments during the opening statement or the case-in-chief that relate to any purported
15  defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing
16  satisfying each and every element of the defense.  The United States respectfully requests that the Court
17  rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury
18  nullification that would result from such comments.

### H. THE COURT SHOULD PROHIBIT EXAMINATION OR REFERENCE TO ALLEGED DOCUMENT DESTRUCTION AND POOR RECORD KEEPING

The United States seeks to exclude the Defendant from making reference or eliciting testimony regarding (former) Immigration and Naturalization Services' ("INS"), now Department of Homeland Security's record keeping or access to information and records.  Specifically, the United States seeks to preclude reference to argument that (1) INS computers are not fully interactive with other federal agencies' computers, (2) over 2 million documents filed by immigrants have been lost or forgotten, (3) other federal agencies have the ability and authority to apply for an immigrant to come into the United States, or (4) the custodian of the A-File never checked with other federal agencies to inquire about documents relating to the Defendant.  Such argument is irrelevant based upon the facts of this case as

there has been no proffer or mention by the Defendant that he ever made application to seek reentry after deportation. See United States v. Rodriguez-Rodriguez, 364 F.3d 1142 (9th Cir. 2004) (affirming District Court Judge Lorenz's rulings to deny such testimony in a § 1326 "found in" case with similar facts).

The Ninth Circuit Court of Appeals held in Rodriguez-Rodriguez that any such testimony or cross examination seeking to elicit such testimony is properly barred as irrelevant. Id. at 1146. The Ninth Circuit explicitly rejected defense counsel's claim that the district court's exclusion of the anticipated testimony violates the Confrontation Clause. Instead, it declared that "none of the that information is relevant on the facts of this case, because it is uncontested that Rodriguez never made any application to the INS or any other federal agency." Thus, absent at a minimum a proffer that Defendant had in fact applied for or obtained permission to enter or remain in the United States in this instant case, any such line of inquiry on cross examination or on direct testimony is irrelevant and properly excludable.

Additionally, the United States seeks to preclude reference to shredding of immigration documents by a (former) INS contractor as set forth in United States v. Randall, et al., Criminal Case No. SA CR 03-26-AHS (C.D. Cal. 2003) unless the Defendant testifies or offers evidence that (1) he did in fact apply for permission to reenter the United States from the Attorney General, or his designated successor, the Secretary of the Department of Homeland Security and (2) that such a document would have been stored at that particular facility where the shredding occurred in the Randall case. Any reference of document destruction is irrelevant and unfairly prejudicial unless there is some evidence offered by the Defendant at trial that he did in fact seek permission to reenter the United States. See Fed. R. Evid. 401-403. Moreover, even if the Defendant offers evidence that he did apply, there must be some showing that his application would have been stored at the facility which is the subject of the Randall case during the time of the alleged shredding of the documents. Otherwise, it is immaterial and irrelevant whether a contractor of (former) INS destroyed documents at the INS California Service Center in Laguna Niguel, California because the Defendant did not apply, or if he did apply, his application was not stored there, and therefore, could not have been effected. Such testimony as well as any such statements asserted in Defendant's opening or closing arguments would be unfairly

prejudicial to the United States and likely to cause confusion to the jury because such unsupported blanket allegations or references of document destruction or poor record keeping without any showing by the Defendant that he applied for permission to reenter would be misleading. Accordingly, the United States seeks an order precluding such argument.

## I.     THE COURT SHOULD ADMIT RULE 609 EVIDENCE

The United States intends to use Defendant's prior convictions for impeachment purposes under Rule 609. Specifically, should Defendant testify, the United States intends to inquire about Defendant's following convictions: (1) March 12, 2003 conviction for false claim to United States citizenship, in violation of 18 U.S.C. § 911, in Criminal Case No. 03CR0174-J; (2) April 24, 2002 conviction for false statement to a federal officer, in violation of 18 U.S.C. § 1001, in Criminal Case No. 02CR0806-IEG; and (3) January 1, 2001 conviction for providing a false identification to a peace officer, in violation of California Penal Code § 148.9. The United States will also use Defendant's conviction should Defendant contend that he had permission to enter the United States or that he did not need permission to enter. If Defendant testifies at trial, he will place his credibility squarely at issue, and the United States should be able to inquire in particular his conviction.

Federal Rule of Evidence 609(a) provides in pertinent part

> For purposes of attacking the credibility of a witness, (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of punishment.

Fed. R. Evid. 609(a). The Ninth Circuit has listed five factors that the district court should balance in making the determination required by Rule 609. United States v. Browne, 829 F.2d 760, 762-63 (9th Cir. 1987). Specifically, the court should consider 1) the impeachment value of the prior crime; 2) the point in time of the conviction and the witness's subsequent history; 3) the similarity between the past crime and the charged crime; 4) the importance of the Defendant's testimony; and 5) the centrality of the Defendant's credibility. Id. at 762-63. See also United States v. Hursh, 217 F.3d 761 (9th Cir. 2000).

Here, the five Browne factors weigh heavily in favor of admissibility with regard to both

convictions. First, the impeachment value of Defendant's felony convictions is high, as they involve serious crimes. Defendant received a significant sentence and his disregard for the law casts serious doubt upon his honesty. Second, the Defendant was convicted of all three crimes within the ten year period under Rule 609(b).

Third, the prior conviction is not similar to the crime charged. Thus, there is no risk that the jury would draw the impermissible conclusion that Defendant committed the charged crime because he previously committed the same crime. Fourth, the importance of Defendant's testimony is crucial in a case such as this. For example, if Defendant contends he had permission to be in the United States, his convictions would become highly relevant. Finally, because such a challenge could only be developed through Defendant's own testimony, his credibility in asserting such a challenge would be central to the case.

Furthermore, whatever risk of unfair prejudice exists can be adequately addressed by sanitizing the conviction and with a limiting jury instruction. Accordingly, the Government should be allowed to introduce evidence of Defendant's prior felony conviction under Rule 609(a) if he elects to testify at trial.

**J.    THE COURT SHOULD PROHIBIT COLLATERAL ATTACK OF DEFENDANT'S PRIOR DEPORTATION**

Defendant should not be permitted to argue the lawfulness of his deportation to the jury at trial. See United States v. Alvarado-Delgado, 98 F.3d 492 (9th Cir. 1996) (en banc). The lawfulness of the deportation is not an element of the offense under Section 1326, so this issue should not be presented to or determined by a jury. Id. at 493.

Moreover, in United States v. Garza-Sanchez, 217 F.3d 806, 808 (9th Cir. 2000), the Ninth Circuit held that a Defendant who previously waived his right to appeal cannot collaterally attack his deportation:

> A Defendant charged under 8 U.S.C. § 1326 may not collaterally attack the underlying deportation order if he or she did not exhaust administrative remedies in the deportation proceedings, including direct appeal of the deportation order. Accordingly, a valid waiver of the right to appeal a deportation order precludes a later collateral attack. (citations omitted).

In this case, Defendant validly waived his right to appeal his deportation orders and, therefore, should be precluded from collaterally attacking his deportations. It would be inappropriate to raise this issue before a jury, which is not tasked with determining the validity of the deportation.

### K.    THE COURT SHOULD PRECLUDE EXPERT TESTIMONY BY DEFENSE WITNESSES

In its request for reciprocal discovery, the United States requested permission to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of Defendant, which Defendant intends to introduce as evidence in his case-in-chief at trial or which were prepared by a witness whom Defendant intends to call at trial. While defense counsel may wish to call an expert to testify, Defendant has provided neither notice of any expert witness, nor any reports by expert witnesses. Accordingly, Defendant should not be permitted to introduce any expert testimony.

If the Court determines that Defendant may introduce expert testimony, the United States requests a hearing to determine this expert's qualification and relevant of the expert's testimony pursuant to Federal Rule of Evidence 702 and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999). See United States v. Rincon, 11 F.3d 922 (9th Cir. 1993) (affirming the district court's decision to not admit the defendant's proffered expert testimony because there had been no showing that the proposed testimony related to an area that was recognized as a science or that the proposed testimony would assist the jury in understanding the case); see also United States v. Hankey, 203 F.3d 1160, 1167 (9th Cir.), cert. denied, 530 U.S. 1268 (2000).

### L.    SELF-SERVING HEARSAY IS INADMISSIBLE

Defendant may attempt to prove his own statements through the testimony of another witness. Such efforts would be impermissible because those statements are hearsay. Defendant cannot rely on Federal Rule of Evidence 801(d)(2) because he is the proponent of the evidence and because the evidence is not being offered against him. Rather, he is seeking to have his own self-serving hearsay statements brought before the jury without the benefit of cross examination of himself by the Government. See United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988). Under Rule 801(d)(2),

a statement of a party is not hearsay <u>only</u> when it is being offered <u>against</u> the party, and not when it is being offered on a declarant's behalf.

Nor can Defendant rely on Rule 801(d)(1)(B), which provides for an exception to the hearsay rule for a statement offered to rebut a charge of recent fabrication, since such a statement is not admissible unless the defendant has already testified and has been impeached. <u>United States v. Navarro-Vareles</u>, 551 F.2d 1331, 1334 (9th Cir. 1976). The only exception to the hearsay rule that could possibly permit a defendant to offer his own out-of-court statements at trial would be Rule 803(3), which excludes from the definition of hearsay a statement of the declarant's "then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health) but not including a statement of memory or belief to prove the fact remembered or believed.

**M.     THE COURT SHOULD ADMIT RULE 404(B) EVIDENCE**

Defendant was arrested by on several prior occasions, including on or about July 18, 2005, December 26, 2002, February 28, 2002, December 16, 2001 and December 2, 2000. Additionally, Defendant was removed from the United States on numerous occasions. The Government contends that this evidence, along with other evidence also provided to Defendant, may be offered by the Government under Federal Rule of Evidence 404(b) to prove knowledge, intent, plan, opportunity and absence of mistake or accident.

Rule 404 is entitled "Character Evidence Not Admissible To Prove Conduct; Exceptions; Other Crimes," and reads as follows:

> (a) **Character Evidence Generally.**–Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>
> (1) **Character of Accused.**–Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same, or if evidence of a trait of character of the alleged victim of the crime is offered by an accused and admitted under Rule 404(a)(2), evidence of the same trait of character of the accused offered by the prosecution;
>
> (2) **Character of the Alleged Victim.**–Evidence of a pertinent trait of character of the alleged victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first

aggressor;

(3) **Character of Witness.**–Evidence of the character of a witness, as provided in rules 607, 608, and 609.

(b) **Other Crimes, Wrongs, or Acts.**–Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may,[2] however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404.

Rule 404(b) thus restates the long-settled rule that evidence of prior or subsequent bad acts or crimes cannot be admitted when the sole relevancy is to show disposition to commit crimes with which the defendant is charged. See generally Michelson v. United States, 335 U.S. 469, 475-76 (1948); United States v. Hernandez-Miranda, 601 F.2d 1104, 1107-08 (9th Cir. 1979). But the Rule, as the Ninth Circuit has noted, is an inclusionary one where "evidence of other crimes is inadmissible under this rule only when it proves nothing but the defendant's criminal propensities." United States v. Sneezer, 983 F.2d 920, 924 (9th Cir. 1992); see also United States v. Hinostroza, 297 F.3d 924, 928 (9th Cir. 2002) (quoting United States v. Ayers, 924 F.2d 1468, 1473 (9th Cir. 1991)) ("The only time such evidence may be excluded by rule 404(b) is if the evidence 'tends to prove only criminal disposition.'") (emphasis in original); United States v. Herrell, 588 F.2d 711, 714 (9th Cir. 1978) ("This court has also stated that Rule 404(b) is a rule of inclusion which admits evidence of other crimes or acts relevant to an issue in the trial, except where it tends to prove only criminal disposition.") (internal quotations and citations omitted).

On the other hand, when offered to prove something other than propensity–such as motive,

---

[2] It should be noted that the Advisory Committee Notes upon the enactment of the Rule underscored that the use of the word "may" in the rule "is not intended to confer any arbitrary discretion on the trial judge. Rather, it is anticipated that with respect to permissible uses for such evidence, the trial judge may exclude it only on the basis of those considerations set forth in Rule 403, i.e., prejudice, confusion, or waste of time." Fed. R. Evid. 404(b), advis. note 1974.

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident–Rule 404(b) applies to admit the "other act" evidence. See Fed. R. Evid. 404(b); United States v. Montgomery, 150 F.3d 983, 1000-01 (9th Cir. 1998); United States v. Johnson, 132 F.3d 1279, 1282 (9th Cir. 1997) ("So long as the evidence is offered for a proper purpose, such as to prove intent, the district court is accorded wide discretion in deciding whether to admit the evidence and the test for admissibility is one of relevance."). In this regard, the Rule is of vital importance, especially in criminal proceedings that typically involve inquiry into the intent of the accused. As the Supreme Court indicated in United States v. Huddleston, 485 U.S. 681 (1988), "[e]xtrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." Id. at 685.

When offered for one or more of the favored purposes enumerated in the Rule, "other act" evidence is proper and becomes admissible if it meets the Ninth Circuit's five-part admissibility test. The "other act" evidence may be admissible if (1) it tends to prove a material point; (2) it is not too remote in time; (3) it is sufficient to support a finding that defendant committed the other act;[3] (4) (in certain cases)[4] the act is similar to the offense charged; and (5) a determination under Rule 403 -

---

[3] In United States v. Huddleston, 485 U.S. 681, 685 (1988), the Supreme Court ruled that a district court need not make a preliminary finding that the offering party proved the specific act evidence by a clear and convincing or preponderance of the evidence standard. Instead, the Court held that such evidence should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the specific act. See id.

[4] "When evidence of a prior act is offered to prove knowledge, the prior act need not be similar to the charged act as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the knowledge." United States v. Santa-Cruz, 48 F.3d 1118, 1119 (9th Cir. 1995) (quoting United States v. Arambula-Ruiz, 987 F.2d 599, 603 (9th Cir. 1993)). When the evidence is offered to show intent, however, the similarity requirement is of utmost importance. See United States v. Adrian, 978 F.2d 486, 492-493 (9th Cir. 1992) (noting

whether the probative value is substantially outweighed by the prejudicial impact. See United States v. Romero, 282 F.3d 683, 688 (9th Cir. 2002) (quoting United States v. Chea, 231 F.3d 531, 534 (9th Cir. 2000)); see also United States v. Sneezer, 983 F.2d 920, 924 (9th Cir. 1992) (restating test). Therefore, Rule 404(b) applies to either exclude "other act" evidence (when offered solely as improper conformity evidence), or to permit "other act" evidence (when offered for a proper purpose subject to the Ninth Circuit's five-part test).

The Government contends that all of the proffered evidence meets the test in this Circuit: (1) the evidence tends to prove a material point - the Defendant's knowledge of his whereabouts and intent to enter the United States; (2) it is not too remote in time; (3) it is sufficient to support a finding that defendant committed the other acts; and (4) the acts are similar to the offense charged. Moreover, under Rule 403, this evidence is highly probative and is not substantially outweighed by any prejudicial impact. The evidence should be admitted to prove knowledge, plan, intent, opportunity, and lack of mistake or accident.

## IV

## **CONCLUSION**

For the reasons set forth above, the Government respectfully requests that the Court grant its motions in limine.

DATED: May 20, 2008

          Respectfully submitted,

          Karen P. Hewitt
          United States Attorney


          /s/ Luella M. Caldito
          LUELLA M. CALDITO
          Assistant U.S. Attorney

---

the significance of similarity for intent type evidence because "if the prior act is not similar, it does not tell the jury anything about what the defendant intended to do in his later action").

|   |   |   |
|---|---|---|
| 1 | UNITED STATES DISTRICT COURT | |
| 2 | SOUTHERN DISTRICT OF CALIFORNIA | |
| 3 | UNITED STATES OF AMERICA, ) | Case No. 08CR0625-JAH |
| 4 | Plaintiff, ) | |
| 5 | v. ) | CERTIFICATE OF SERVICE |
| 6 | JAVIER MORENO-MENDOZA, ) | |
| 7 | Defendant. ) | |

IT IS HEREBY CERTIFIED THAT:

I, LUELLA M. CALDITO, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of GOVERNMENT'S MOTIONS IN LIMINE on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Victor Pippins, Federal Defenders of San Diego, Inc.

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 20, 2008.

/s/ Luella M. Caldito
LUELLA M. CALDITO